## NASH v. CONSTITUTION INDEMNITY CO. of PHILADELPHIA et al.

No. 21019. Opinion Filed July 6, 1932.

Erwin & Erwin, for plaintiff in error.

Rittenhouse, Lee, Webster & Rittenhouse, for defendants in error.

RILEY, J. This action was commenced by plaintiff in error, herein referred to as plaintiff, against defendants in error, herein referred to as defendants, to recover judgment against defendant Indemnity Company and W. T. Casteel upon a written bond or guaranty given by said defendant to plaintiff and J. A. Dunham in connection with a sale of a stock of merchandise, and for judgment against Dunham excluding him from any interest in or right under said bond.

The trial court sustained the separate demurrer of defendant Indemnity Company to the second amended petition of plaintiff, and plaintiff electing to stand on said petition, the court dismissed the action. The second amended petition, together with the exhibits made a part thereof, alleged, in substance, that on January 18, 1928, plaintiff, being the owner of said stock of merchandise, entered into a written contract for the sale thereof to defendant Dunham. In consideration thereof Dunham was to convey to plaintiff certain real estate, a part of which was mortgaged for $3,000, at a net value of $4,950. The difference between the $4,950 and the sale price, which was

to be ascertained by invoice, was to be paid by Dunham by paying to plaintiff 75 per cent. of gross sales out of the stock until the entire balance was paid. Before this contract was completely consummated they entered into a supplemental contract under which the first contract was modified in view of an opportunity they then had to sell said stock of merchandise to defendant Casteel, the supplemental contract to be effective only in case the deal with Casteel was consummated. The deal with Casteel was consummated and the contract with Casteel was reduced to writing. Then it was agreed that Casteel would take the stock of merchandise at cost. plus freight, and the fixtures at an agreed price of $1.057, for which he agreed to convey to plaintiff and Dunham certain real estate valued at $9,000, subject to a first mortgage lien of $4,000 and a second mortgage lien of $1,500, or a net value of $3.500, to be applied on the stock and fixtures. The remainder of the purchase price was to be paid by Casteel out of the gross sales from the stock in the following manner: Seventy per cent. of the sales to be applied thereon until the purchase price was paid in full. The money received from such sales daily, 70 per cent. thereof to be deposited in a designated bank to the credit of plaintiff and Dunham. The contract then provided that Casteel "agrees to furnish surety bond in the sum of $6,000, conditioned for the faithful payment of 60% of said sale to first parties, and shall give a chattel mortgage on said fixtures to guarantee the faithful payment of the other ten per cent. of said sale to first parties; but it is agreed further that if second party sells said fixtures, the full purchase price thereof shall be applied on the amount due first parties, but such payment shall not relieve him from continued payments of 70 per cent. of sales until first parties have been fully paid."

The supplemental contract between Nash and Dunham became operative and under it the real estate which Dunham had originally agreed to convey to plaintiff was likewise to be so conveyed. Thereby Dunham appears to have acquired some interest in the stock of merchandise and fixtures, the extent of such interest, however, is not made clear.

Pursuant to the contract, Casteel, as principal, and defendant Constitution Indemnity Company executed a bond to J. A. Dunham and R. C. Nash in the sum of $6,000, contioned as follows:

"The condition of this obligation is such that whereas on the 24th day of January, 1928, the said W. L. Casteel purchased from the said J. A. Dunham and R. C. Nash a general merchandise store in the town of Wellston, Oklahoma;

"That the said W. L. Casteel paid all the purchase price save and except the sum of $6,000, which he has bound himself to pay to said J. A. Dunham and R. C. Nash the said sum to be paid as follows:

"60% of the gross sales from the said stock of merchandise until the said sum of $6,000 is paid, and

"Whereas, the said W. L. Casteel and the Constitution Indemnity Company of-Philadelphia firmly bind themselves that the said W. L. Casteel will pay to the said Dunham and Nash, 60% of the gross sales from said stock until the sum of $6,000 is paid. However this bond does not guarantee the debt under the said transaction, except in this much, to wit: that in case the said W. L. Casteel should retain more than 40% of the gross sales of said stock, then the Constitution Indemnity Company. agrees to indemnify the said Dunham and Nash for whatever difference there is between 40% of the gross sales and the amount actually retained by the said W. L. Casteel."

The second amended petition further alleged that plaintiff and Dunham delivered said stock of merchandise to Casteel under said contract at an agreed price of approximately $12,000, which was the amount of the invoice; that Casteel began making sales therefrom and paid from such sales and under said contract the sum of $500 as the 60 per cent. due under the contract and bond; that shortly thereafter defendants Casteel and Dunham conspired between themselves and third parties to cheat and defraud plaintiff of his interest; that in furtherance of such conspiracy Casteel and Dunham made a purported sale of said stock of merchandise and fixtures to defendant Dunham for a purported consideration of $7,000; $3,000 thereof in cash, and defendant Casteel received from Dunham $900, representing the 30 per cent. of which Casteel was entitled to retain for operating expenses, and the "remainder of such consideration was an agreement by the said Dunham to pay and satisfy this plaintiff the amount due him thereunder."

It then alleges, in substance, that Dunham and other members of his family had sold and conveyed the remainder of said stock and appropriated the proceeds thereof to their own use.

It alleges that the interests of plaintiff and Dunham in said stock of goods and bond were several and separate, and that the separate interest of said plaintiff in said stock was of the value of $4,000, and that had said stock been properly handled plaintiff would have received the full amount due

him out of 60 per cent. of the gross sales therefrom.

It then alleged Dunham refused to join with plaintiff in suit upon said bond and for that reason he was made a party defendant.

Defendant Indemnity Company filed its separate demurrer to said second amended petition setting up three grounds, viz.: "1. That there is a defect of parties plaintiff in said action. 2. That there is a defect of parties defendant in said action. 3. That said second amended petition wholly fails to state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant."

The demurrer was sustained without stating upon which ground or grounds, and plaintiff electing to stand on said amended petition, the cause was dismissed, and plaintiff appeals.

The greater part of plaintiff's brief is directed to the question of defect of parties plaintiff. Defendant waives this question aside and virtually concedes that there was no merit in the first ground of the demurrer, except to say that by reason of certain allegations concerning Mrs. J. A. Dunham, she should have been made a party. This suggestion is not well taken, as Mrs. J. A. Dunham was not a necessary party. There is no merit in the demurrer to the first two grounds. As to the third ground, it will be observed that the bond specifically provided that it does not guarantee the debt which Casteel owed for the balance of the purchase price of the stock of merchandise, "except in this much, to wit: That in case the said W. L. Casteel should retain more than 40 per cent. of the gross sales of said stock, then the Constitution Indemnity Company agreed to indemnify the said Dunham and Nash for whatever difference there is between 40 per cent. of the gross sales and the amount actually retained by the said W. L. Casteel."

The contract of sale to Casteel probably contemplated that he could sell the merchandise at retail as an ordinary retail merchant, and did not contemplate a sale in bulk, especially to one of the obligees on the bond. But there was nothing therein nor in the bond specifically prohibiting such sale. The bond merely guaranteed that whatever over and above 40 per cent. of the gross sales made by Casteel was retained by him, the surety would pay to Dunham and Nash.

The petition nowhere alleges a breach of this condition of the bond. It does allege that Casteel sold the stock of merchandise to Dunham at an agreed price of $7,000, but it alleges that only $900 was paid to Casteel. The petition nowhere alleges that Casteel received and retained more than $2,800, which would be 40% of the agreed price at which Casteel sold to Dunham. Unless he did so, there was no breach of the bond. It may be that Casteel was not authorized to sell for anything but cash, and in the ordinary way as a retail merchant, and it may be and apparently is true that the sale made by him to Dunham was fraudulent and void as to plaintiff, but unless Casteel kept and retained more than 40 per cent. of the gross sales price, there was no breach of the bond.

There was no error in sustaining the separate demurrer of defendant Indemnity Company, for the reason that the second amended petition, with all the exhibits, did not state a cause of action in favor of plaintiff and against said indemnity company.

The judgment must be, and is hereby, affirmed.

HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., disqualified. LESTER, C. J., and CLARK. V. C. J., absent.